IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA HILBURN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:14-cv-03409-MDH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of his application for Social Security Disability Insurance (SSDI) under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.*, and Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 *et seq*. Plaintiff has exhausted his administrative remedies and the matter is now ripe for judicial review.[1] The Court has carefully reviewed the files and records in this matter and the Court finds the ALJ's decision is not supported by substantial evidence in the record as a whole. The Court **REVERSES** and **REMANDS** the decision to the Commissioner for further proceedings.

## I. BACKGROUND

The procedural history, facts, and issues of this case are contained in the record and the parties' briefs, so they are not repeated here. To summarize, this case involves a 29-year old veteran who applied for SSI and SSDI benefits due to alleged impairments including post-traumatic stress disorder ("PTSD"), partial paralysis, bipolar disorder, and paranoid

---

[1] Plaintiff filed his application for disability on December 13, 2011, alleging disability beginning December 29, 2010. Plaintiff's application was initially denied on January 27, 2012. The ALJ conducted a hearing on January 18, 2013 and issued a written decision denying benefits on March 21, 2013. Plaintiff appealed the ALJ's decision to the Administrative Hearing Commission and the Commission denied Plaintiff's request for review on July 22, 2014.

1

schizophrenia. The ALJ determined that Plaintiff suffered from severe impairments including a right ankle sprain/strain with residual weakness and pain, hypertension, obesity, post-traumatic stress disorder, and bipolar disorder. The ALJ found Plaintiff retained a residual functional capacity ("RFC") to perform light work that avoids concentrated exposure to loud noise and that involves simple, repetitive tasks with only occasional, superficial interaction with others. The ALJ concluded Plaintiff was not disabled during the relevant time period because a significant number of jobs existed in the national economy that Plaintiff could perform. Plaintiff now appeals the decision of the Commissioner arguing the RFC is not supported by substantial evidence in the record as a whole and the ALJ's credibility findings are erroneous.

## II. STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). The standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

2

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). Because RFC is a medical question, it "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). While the ALJ must consider at least some supporting evidence from a medical professional in assessing a claimant's workplace limitations, *see Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). RFC is ultimately an administrative determination reserved to the Commissioner based on all of the relevant medical and other evidence. *Cox*, 495 F.3d at 619; *see* 20 C.F.R. § 404.1545.

### III. DISCUSSION

Upon review, the Court finds the RFC is not supported by substantial evidence in the record as a whole as it relates to Plaintiff's mental impairments. The ALJ determined that Plaintiff suffered from severe mental impairments including PTSD and bipolar disorder but, in determining Plaintiff's associated workplace limitations, the ALJ did not seek or review the opinion of any treating or examining psychologist/psychiatrist. Instead, the ALJ relied solely upon the opinion of non-examining state agency psychologist, Dr. Bland, and the ALJ's independent review of the medical evidence. Although "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" in determining a claimant's RFC, *see Martise*, 641 F.3d at 927, and, indeed, the

3

Eighth Circuit has upheld RFC assessments based solely upon "facts, observations, and medical conclusions that bear directly on the extent of [the claimant's] ability to function in a work environment" as opposed to any medical opinion, *see Cox*, 495 F.3d at 619-20, the Court finds, here, there is insufficient medical evidence bearing on Plaintiff's mental work-related limitations during the relevant time period such that the RFC is not supported by substantial evidence in the record as a whole.

In assessing Plaintiff's mental RFC, the ALJ gave "significant weight" to the opinion of Dr. Bland, a state agency psychologist who completed a Psychiatric Review Technique Form and Mental Residual Capacity Assessment form regarding Plaintiff's mental impairments at the time of the initial disability determination. Ex. 5F, 6F. Dr. Bland did not examine Plaintiff but opined on January 25, 2012, based upon his review of the medical records available at that time, that Plaintiff had no significant limitations in most areas of functioning and only moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, interact appropriately with the public, and accept instructions and respond appropriately to criticism. Tr. 438. For several reasons, the opinion of Dr. Bland does not provide an adequate basis to support Plaintiff's mental RFC. First, Dr. Bland was a state agency psychologist who never examined Plaintiff. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole."). Second, Dr. Bland did not provide any narrative support to explain how or from where he derived his summary conclusions regarding Plaintiff's workplace limitations. *See* 20 C.F.R. § 404.1527(c)(3) ("because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their

4

opinions"). Third, Dr. Bland rendered his conclusory opinion, without the benefit of examining Plaintiff, prior to the majority of Plaintiff's mental health treatment. *See id.* at § 404.1527(c)(6) ("the extent to which an acceptable medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion"). The record reflects that Plaintiff did not seek professional help for his PTSD until approximately December of 2011. Dr. Bland rendered his opinion in January of 2012 and reviewed only one medical record from the VA hospital, which was for Plaintiff's initial appointment at the VA on December 12, 2011. *See* Tr. 434-435. The vast majority of Plaintiff's mental health treatment occurred after that date. *See* Ex. 10F, 11F, 12F, 14F, 15F, 16F. In light of the foregoing, Dr. Bland's opinion, alone, does not provide substantial evidence supporting Plaintiff's RFC. *See, e.g., Brown v. Colvin*, No. 4:14-CV-00288-NKL, 2014 WL 6750041, at *3-4 (W.D. Mo. Dec. 1, 2014) (RFC not supported where ALJ relied on a non-examining state agency consultant, where there was no indication how the consultant reached his conclusions regarding plaintiff's limitations, and where the opinion did not take into account plaintiff's subsequent contradictory medical records).

The ALJ further stated that Dr. Bland's opinion "is widely consistent with the overall evidence of record and the residual functional capacity as stated herein." The Court disagrees. Following Dr. Bland's opinion and prior to the ALJ's decision, Plaintiff's GAF scores were reported as 50, 46, 46, 50, 50, 50, 52, 47, 52, 51, 54, 56, 52, 51, 53, 51, 47, and 52, which indicates Plaintiff was suffering from serious or moderately serious psychological symptoms/ impairments.[2] Plaintiff's medical records show Plaintiff's symptoms increased and decreased

---

[2] A GAF score of 41-50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep job)." A GAF score of 51-60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional

5

over time but that he repeatedly reported nightmares/night terrors, insomnia, intrusive or disturbing memories or thoughts, guilt, irritability, anxiety, hypervigilance, inability to focus or concentrate, memory problems, social difficulties, and suicidal thoughts. Plaintiff's symptoms appeared to temporarily improve or subside during a six-day inpatient stay following a suicide attempt in March of 2012, but the records show Plaintiff's symptoms returned once he re-entered society. Objective neurological testing conducted on March 20, 2012 revealed that Plaintiff was in significant psychiatric distress, that his cognitive deficits appeared to have a psychiatric etiology, that he suffered from low average intelligence and low average memory abilities, and that he was slow to catch on to task. Tr. 591-600. It was noted that Plaintiff was anxious and easily stressed, especially when the assessments were timed, that he was hard on himself for perceived poor performance, and that he provided adequate effort but tired towards the end of testing. Tr. 588-589. Plaintiff reportedly received some B's and C's in his college courses but the record also shows that he reported feeling overwhelmed and stressed about school (Tr. 587), he struggled to complete school assignments on time (Tr. 672), he failed at least one class (Tr. 808), and he was placed on academic probation (Tr. 91-92). On June 22, 2012, Plaintiff's treating psychologist wrote that "[v]eteran continues to have re-experiencing/arousal/avoidance symptoms of PTSD that impact interpersonal, vocational, and social functioning." Tr. 691. In light of the medical evidence of record, only a glimpse of which is described above, the ALJ's conclusion that the record is "widely consistent" with the minimal limitations cited by Dr. Bland is not supported by substantial evidence in the record as a whole.

Instead, the Court finds there is insufficient evidence in the record bearing on how Plaintiff's mental impairments affect his ability to function in the workplace on a regular and

---

panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV - TR 34 (4th ed. 2000).

continuing basis, meaning 8 hours a day, for 5 days a week, or an equivalent work schedule.[3] The record contains limited, if any, direct medical evidence regarding Plaintiff's ability to "carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." [4] *See* 20 C.F.R. § 404.1545(c); SSR 85-16 (S.S.A. January 1, 1985). Moreover, an ALJ may not draw upon his own inferences from medical reports.[5] Like the situation presented in *Nevland v. Apfel*, the Court finds "the ALJ should have sought such an opinion from [Plaintiff's] treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess [Plaintiff's] mental . . . residual functional capacity." 204 F.3d 853, 858 (8th Cir. 2000). District courts presented with similar circumstances agree that further development of the record is necessary and that remand is appropriate to determine how the claimant's impairments impact his ability to function in the workplace. *See, e.g., Gage v. Colvin*, No. 12-3095, 2014 WL 3359334, at *3-4 (W.D. Ark. July 9, 2014); *Al-Hameed v. Colvin*, No. 13-3009-MWB, 2013 WL 6858427, at *14-16 (N.D. Iowa

---

[3] *See generally* 20 C.F.R. § 404.1545(c) ("When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity *for work activity on a regular and continuing basis*." (emphasis added)); SSR 96-8P (S.S.A. July 2, 1996) ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . *[a] 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule*." (emphasis added)).

[4] On the mental RFC assessment form, these topics are broken down into various work-related functions such as the ability to understand and remember work-like procedures and instructions, the ability to carry out instructions, the ability to maintain concentration and attention, the ability to perform activities on a schedule and maintain regular and punctual attendance, the ability to sustain an ordinary routine without supervision, the ability to work with others without being a distraction or distracted by them, the ability to make work-related decisions, the ability to complete a normal workday/workweek without interruptions from psychological symptoms, the ability to ask simple questions or request assistance, the ability to adapt and respond to changes in the work environment, and the ability to set realistic goals or make plans independently of others.

[5] The Court notes that the record shows Plaintiff asked his treating psychiatrist, Dr. Hemme, to complete a disability questionnaire on his behalf but the doctor declined, stating that "I was not comfortable completing them. They focus on his ability to remember things, concentration and getting along with others. The neuropsych testing did not really discuss these questions enough for me to feel comfortable answering in the detail needed." Tr. 695.

7

Dec. 30, 2013); *Ivey v. Colvin*, No. 1:12CV131 LMB, 2013 WL 5217026, at *10-11 (E.D. Mo. Sept. 17, 2013); *Loftis v. Colvin*, 977 F. Supp. 2d 909, 919-20 (N.D. Iowa 2013).[6]

## IV. CONCLUSION

For the reasons set forth herein, the Court finds the decision of the Commissioner is not supported by substantial evidence in the record as a whole and remand is necessary in order to fully develop the record. The decision of the Commissioner is hereby **REVERSED** and **REMANDED** for further proceedings consistent with this opinion. Upon remand, the ALJ shall obtain a mental RFC assessment from either a treating or examining source that opines on Plaintiff's mental work-related limitations. The ALJ shall then reassess Plaintiff's overall RFC and receive appropriate VE testimony to determine whether Plaintiff is considered disabled.

**IT IS SO ORDERED**.

Dated: January 29, 2016 　　　　　　　　*/s/ Douglas Harpool*
　　　　　　　　　　　　　　　　　　　**DOUGLAS HARPOOL**
　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

---

[6] The ALJ has a duty to develop the record if a crucial issue is underdeveloped and the ALJ may re-contact medical sources or order consultative evaluations if the available evidence does not provide an adequate basis for determining the merits of the disability claim. *See* 20 C.F.R. § 416.920b.